# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GARY CARRIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-1089 |
| ) | |
| ) | Judge Trauger |
| ARTHUR J. GALLAGHER RISK ) | |
| MANAGEMENT SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Defendant Arthur J. Gallagher Risk Management, Inc.'s Motion for Judgment on the Pleadings (Docket No. 9). Plaintiff has submitted a Response in Opposition to Plaintiff's Motion (Docket No. 13), and the Defendant has filed a Reply Brief in Support (Docket No. 14). For the reasons discussed herein, the Defendant's motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Gary Carrigan, was employed at Gale Smith and Company from 2006 until July 1, 2008, when it was purchased by Arthur J. Gallagher & Company. (Docket No. 1 Ex. 1 at 3-4.) After July 1, 2008, the Plaintiff worked for the Defendant, Arthur J. Gallagher Risk Management Services, Inc. ("AJGRMS") in Tennessee. (*See id.*; Docket No. 8 at 2.) AJGRMS is an Illinois corporation with its principal place of business in Illinois that offers a variety of insurance services, including to the trucking industry. (Docket No. 1 Ex. 1 at 3.) The Plaintiff alleges that at all times relevant to this lawsuit - prior, during, and after his employment with the Defendant - he was

1

involved in the sale of "The Drivers Advantage Program," a type of medical benefit program directed specifically to the trucking industry that provides limited benefits during a trucker's "initial period of employment." (*Id*. at 3,5.)

During his employment with the Defendant, the Plaintiff was asked to a sign a non-compete agreement as part of his employment. (Docket No. 8 at 3.) After his refusal to sign a non-compete agreement, the Plaintiff alleges that the Defendant offered to sell him its existing accounts in "The Drivers Advantage Program." (*Id*. at 5-6.) The Plaintiff only agreed to purchase them after the Defendant agreed to enter into a non-compete agreement. (*Id*.) It appears that these existing accounts were for companies based in Kentucky and throughout the state of Tennessee.[1] The Plaintiff alleges that he agreed to pay the Defendant the approximate revenue generated by the eleven accounts for the fifteen months. (*See* Docket No. 1 Ex. 1 at 12.) The Plaintiff alleges that in return he was entitled, among other things, to the following rights: (1) all of the Defendant's "right, title and interest" in those eleven accounts, (2) the Defendant's promise not to in any way "induce the termination or non-renewal" of those eleven accounts for three years, and (3) that for those same three years the Defendant would "not . . . compete directly or indirectly with Buyer in the sale of a product . . . similar [to the Driver Advantage Program with respect] . . . to any purchaser or potential purchaser of such product[.]" (Docket No. 1 Ex. 1 at 11, 13.) The effective date of this agreement was March 19, 2009. (*Id*. at 6.)

---

[1]The list of the eleven companies included in the accounts is attached as an exhibit to the Complaint. (Docket No. 1 Ex. 1 at 15). The list does not identify the exact locations of these companies. (*See id*.) The Plaintiff represents that these accounts "were not limited to middle Tennessee but also [included] companies based in East and West Tennessee along with companies based in Kentucky." (Docket No. 13 at 1 n.1.) The Defendant does not appear to dispute this. (*See* Docket 14 at 13-14.)

On October 15, 2010 the Plaintiff, a Tennessee citizen and resident, filed this suit in the Circuit Court for Williamson County alleging that the Defendant, despite the terms of the non-compete agreement, sells insurance products in competition with the Drivers Advantage Program and intended to do this all along. (*Id*. at 1, 3, 6-8.) The Plaintiff seeks to recover under three theories of liability - breach of contract, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA"). (*Id*. at 7-8.) The Defendant removed this case to this court on November 17, 2010. (Docket No. 1). On December 8, 2010 the Defendant filed its Answer (Docket No. 8) and its Motion for Judgment on the Pleadings (Docket No. 9). The Defendant seeks dismissal of the Complaint "in its entirety, with prejudice."[2]

## ANALYSIS

The Plaintiff alleges that he has been damaged by the Defendant's alleged continued competition with the him. In its motion, the Defendant asserts that the Plaintiff's claims amount to an attempt to enforce a non-compete agreement that is unenforceable as a matter of law for three independent reasons: (1) failure to limit its scope to legally protectable interests, (2) failure to include a geographic limitation on its scope, and (3) failure to limit the covenant to a reasonable duration. (Docket No. 9 at 1.)

**I. Standard of Review**

---

[2]The Defendant's motion solely challenges the enforceability of the parties' non-compete agreement. (Docket No. 9 at 1.) Even if the court were to find the non-compete agreement unenforceable, which it does not, that finding would not necessarily affect the viability of the misrepresentation and TCPA claims. "Fraudulent misrepresentation" sounds in tort and does not require a party to prove the existence of an enforceable contract. *See Spectra Plastics, Inc. v. Nashoba Bank*, 15 S.W.3d 832, 840-41 (Tenn. Ct. App. 1999) (setting forth the elements). Similarly, the TCPA creates a statutory cause of action and does not require proof of an enforceable contract. Tenn. Code Ann. § 47-18-109; *see Davis v. McGuigan*, 325 S.W.3d 149, 162 (Tenn. 2010).

3

The Defendant brings this motion pursuant to Federal Rule of Civil Procedure 12(h)(2), which provides that, after the answer has been filed, a defendant may bring a motion for failure to state a claim upon which relief may be granted as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Fed. R. Civ. P 12(h)(2). The court is to analyze such a motion as a typical motion for failure to state a claim, which is often brought under Federal Rule of Civil Procedure 12(b)(6). *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11-12 (6th Cir.1987).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir.2002). The Federal Rules of Civil Procedure require that a plaintiff provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of

action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

**II. Non-compete Agreements**

Generally, where parties have entered into a non-compete agreement in good faith, and to protect legally cognizable interests, Tennessee courts will enforce the agreement, making modifications where necessary to make the restrictions reasonable in the circumstances of the case. *See Cent. Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 37 (Tenn. 1984) (suggesting in the absence of a showing of bad faith that only provisions for attorney's fees in a non-compete agreement might be voided as unreasonable rather than modified); *Amarr Co., Inc. v. Depew*, No. 03A01-9511-CH-00412, 1996 WL 600330, *3, *5 (Tenn. Ct. App. Oct. 16, 1996) (holding judicial modification inappropriate where the covenant did not protect a legally cognizable interest). Non-compete agreements ancillary to the sale of a business, rather than ancillary to an employment agreement, are treated especially favorably by Tennessee courts. *See Zimmer Melia & Assoc. v. Stallings*, No. 3:08-0663, 2008 WL 3887664, *4 (M.D. Tenn. Aug 21, 2008) (suggesting that the difference in treatment may result from "unequal bargaining power" in the employer-employee context); *see also Suggs v. Glenn*, C.A. No. 837, 1989 WL 3114, *3 (Tenn. Ct. App. Jan. 20, 1989) ("A somewhat different test is applied in employer-employee covenants not to compete from the sale of business test."). In this case, there is no dispute that the non-compete agreement was entered into ancillary to the sale of a business, specifically, the book of business associated with the "Drivers Advantage Program." (*See* Docket No. 10 at 2.)

5

Nevertheless, the Defendant makes three challenges to the non-compete agreement that it argues renders the agreement wholly unenforceable. For the reasons discussed below, the court finds each without merit.

**A. The non-compete agreement protects a legally cognizable interest.**

First, the Defendant argues that, under Tennessee law, there are only "three justifications for use of a restrictive covenant" and that " the retention of past and future prospective clients is not" one of them. (Docket No. 10 at 6-7 (citations omitted).) There is no support for this proposition with respect to non-compete agreements ancillary to a business sale.

Under Tennessee law, non-compete agreements ancillary to a valid sale of a business are "lawful and *enforceable, provided* such covenants are reasonable and *go no further than affording a fair protection to the buyer*." *Greene County Tire and Supply, Inc. v. Spurlin*, 338 S.W.2d 597, 600 (Tenn. 1960) (emphasis added). In *Green County Tire*, the Tennessee Supreme Court upheld an agreement establishing a radius of 100 miles from the location of the business the defendant sold to the plaintiff within which the defendant could not compete, without any limitation to existing clients. *See id*. at 601. Similarly, the Tennessee Court of Appeals held that a defendant who sold his oil delivery business - his truck and existing accounts - could be restricted from competing with the plaintiff in the three counties in which the defendant previously had an established oil delivery route without limitation to the defendant's previous clients. *Butts v. Birdwell*, 503 S.W.2d 930, 933-34, 937. (Tenn. Ct. App. 1973).

Tennessee authority cited by the Defendant is not to the contrary. The cases cited by the Defendant for the proposition that there are only "three justifications for use of a restrictive

6

covenant" concern non-compete agreements ancillary to a valid employment agreement. (*See* Docket No. 10 at 6.); *compare, e.g., Cam Int'l., L.P. v. Turner*, No. 01-A-01-9203CH00116, 1992 WL 74567, *3 (Tenn. Ct. App. April 15, 1992) ("The courts have generally recognized three general justifications *for an employer's use of a noncompetition agreement*.") (emphasis added); *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 745 (Tenn. Ct. App. 1987) (suit arose from alleged breach of an employment contract and the court analyzed reasonableness within the "*particular circumstances*" of the case) (emphasis added).

**B. Absence of explicit geographic limitation does not render the non-compete agreement unmodifiable.**

Second, the Defendant argues that the absence of a specific geographic limitation in the non-compete agreement renders it unenforceably broad. (*See* Docket No. 14 at 2-3.) However, in the most recent Tennessee case to deal with a non-compete agreement ancillary to a business sale, the Tennessee Court of Appeals imposed a reasonable geographic limitation consistent with the circumstances of the case, where the parties had not made one explicit. *Butts*, 503 S.W.2d at 937 (inferring a geographical limitation to the three counties in which the defendant had previously conducted the business he sold to the plaintiff). Furthermore, the case which the Defendant cites - *J. T. Shannon Lumber Co. v. Barrett*, No. 2:07-cv-2847-JPM-cgc, 2010 WL 3069818 (W.D. Tenn. Aug. 4, 2010) - does not support the proposition that judicial modification is inappropriate. In that case the district court concluded that the "geographic scope . . . on its face [is] overly broad as it *purports to cover the entire globe*." *Id*. at * 9 (emphasis added). Nevertheless, the court concluded a judicial modification - short of the whole globe but to include the Asian market - was reasonable in the circumstances. *Id*. Additionally, the court, citing Tennessee authority, declined to void the

7

non-compete agreement because there was "no evidence that the Plaintiff acted with bad faith by inserting" it into the employment agreement. *Id*.

Here the Plaintiff has posited a possible judicial modification that might be made - to the states in which he sells insurance. (*See* Docket No. 13 at 1.) However, it is not appropriate to modify the non-compete agreement at this stage of the proceedings. Under Tennessee law, judicial modification is to be made after a factual record has been developed. *See Cam Int'l L.P.*, 1992 WL 74567, *4 (denying the plaintiff's application for an interlocutory appeal because the "record in the present case .... contains too many factual disputes and unanswered factual questions" to determine if restrictions in the non-compete covenant at issue were reasonable). Consequently, judicial modification may be appropriate later in this litigation.

### C. The non-compete agreement's three-year duration is neither *per se* unreasonable nor unmodifiable.

Lastly, the Defendant argues that the non-compete agreement's "three year duration is unreasonable under Tennessee law" and provides an alternative basis for invalidating the agreement. (Docket No. 10 at 6.) The three-year duration of the parties' covenant is neither *per se* unreasonable, nor would it be judicially unmodifiable if it were. The Defendant cites *Money & Tax Help, Inc. v. Moody*, 180 S.W.3d 561 (Tenn. Ct. App. 2005), for the proposition that a three-year limitation is *per se* unreasonable. (*Id*.) But in that case the Tennessee Court of Appeals made clear that, "[u]nder the specific circumstances of the present case, we *hold that the three-year restriction is reasonable*." *Money & Tax Help, Inc.*, 180 S.W.3d at 566 (emphasis added). As noted *supra*, the Tennessee Supreme Court has upheld a non-compete agreement with the duration of five years in the business sale context. *See Green County Tire & Supply, Inc.*, 338 S.W.2d at 601. Further factual

development is necessary to ascertain whether three years is unreasonable, but, given the factual allegations and the procedural posture of this case, the Defendant's Motion for Judgment on the Pleadings cannot be granted on this basis.

For the reasons discussed herein, Defendant Arthur J. Gallagher Risk Management, Inc.'s Motion for Judgment on the Pleadings (Docket No. 9) is **DENIED**.

It is so Ordered.

Enter this 10th day of February 2011.

ALETA A. TRAUGER
United States District Judge