# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

GARY CARRIGAN,                 )
                                       )
     **Plaintiff,**             )
                                       )    **Case No. 3:10-cv-1089**
                                     )    **Judge Trauger**
**v.**                                 )
                                       )
**ARTHUR J. GALLAGHER RISK**     )
**MANAGEMENT SERVICES, INC.,**   )
                                     )
     **Defendant.**           )

## MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 37), to which the plaintiff has responded (Docket No. 46), and the defendant has filed a reply (Docket No. 50). For the reasons discussed herein, the defendant's motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

The plaintiff, Gary Carrigan was formerly employed by the defendant, Arthur J. Gallagher Risk Management Services, Inc. ("AJGRMS"), a subsidiary of Arthur J. Gallagher & Co. ("Gallagher"), a worldwide insurance brokerage company that participates in a variety of insurance related business.[1] Prior to his employment with AJGRMS, the plaintiff was employed

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 39), the plaintiff's responses thereto (Docket No. 47), the plaintiff's statement of additional material facts (Docket No. 48), the defendant's responses thereto (Docket No. 51), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

by Gale Smith and Company ("Gale Smith"), an insurance brokerage company located in Brentwood, Tennessee. On July 1, 2008, Gallagher acquired Gale Smith, and the plaintiff subsequently became an AJGRMS employee working out of the same location in Brentwood. While employed at Gale Smith and AJGRMS, the plaintiff sold an insurance product he helped develop known as the "Drivers Advantage Program"

The Drivers Advantage Program is a limited medical benefit plan, which is a form of health insurance providing basic medical coverage.[2] These plans are often used in industries containing part-time or seasonal employees. They are also used in industries with personnel who do not otherwise qualify for comprehensive benefits. An example of such personnel are owner operators in the trucking industry. In some instances, limited medical benefit plans may also provide basic gap coverage between the time an employee commences employment and the point at which that employee is eligible to receive more comprehensive medical benefits. The Drivers Advantage Program was specifically developed for the trucking industry.[3]

Upon selling the Drivers Advantage Program to a trucking client, the plaintiff's earnings are based on his commissions. Specifically, he receives a commission on the premiums paid by that client. To date, the plaintiff has earned commissions that have ranged from 7% to 22%.

When he was employed by AJGRMS, the plaintiff spent the majority of his time marketing the Drivers Advantage Program from Tennessee. While he is personally licensed to sell insurance in Tennessee, Kentucky, and Florida, the plaintiff maintains that his business activities encompass a broader geographic scope. (*See* Docket No. 41, Ex. A, at 6-7; Docket No.

---

[2] Such plans do not offer catastrophic coverage.

[3] At his deposition, the plaintiff testified that the Drivers Advantage Program could also be adapted to suit potential clients in other industries. (Docket No. 41, Ex. A at 4.)

49 ¶ 2.)  In particular, the plaintiff has testified that he is able to market the Drivers Advantage

Program to a larger geographic market through partnerships he maintains with brokers licensed to

sell insurance in states where he lacks a license.  (Docket No. 41, Ex. A at 7.)  AJGRMS does not

dispute the plaintiff's testimony.  In fact, it has admitted that an insurance product could be sold

by someone who is not licensed in a particular state through the use of local brokers possessing

such a license.  (Docket No. 51 ¶¶ 75-76.)

Sometime after AJGRMS' acquisition of Gale Smith, the plaintiff had numerous

discussions with Frank Caruso, an Area President in AJGRMS' Brentwood office, concerning

whether the plaintiff would sign a covenant not to compete.  Both individuals also discussed the

manner in which the plaintiff would earn his commissions in connection with the Drivers

Advantage Program following the acquisition.  Specifically, Caruso informed the plaintiff that a

portion of his commissions would have to be split with the broker benefits services division at

Gallagher.  The plaintiff did not find this potential arrangement to be appealing.  Caruso also

expressed his belief that limited medical benefit programs did not possess a lucrative future.

Indeed, Caruso had little interest in the Drivers Advantage Program, believed that it was not a

desirable product to sell, and felt that its appeal would continue to diminish if health care reform

legislation were enacted.

Following these discussions, AJGRMS and the plaintiff negotiated the plaintiff's

departure from the company and his purchase of the eleven client accounts associated with his

Drivers Advantage Program book of business ("the Drivers Advantage accounts") that he would

take with him upon his exit.  The plaintiff was represented by counsel during these negotiations,

which led to an agreement ("the Sale Agreement") whereby the plaintiff agreed to purchase the

aforementioned accounts.[4]   While the majority of these clients were based in Tennessee, three

clients were based in the following states: Alabama, Indiana, and Kentucky.[5]

The Sale Agreement, which was effective March 18, 2009, contained the following non-

compete clause:

> [AJGRMS] and its affiliates agree that they will not, directly or indirectly, solicit, accept any offer to provide or otherwise compete directly or indirectly with Buyer in the sale of a product known as the Driver[s] Advantage [P]rogram or similar product to any purchaser or potential purchaser of such product, nor shall [AJGRMS] solicit, accept any offer to provide or otherwise induce the termination or non-renewal of the Drivers Advantage [P]rogram listed on the attached Exhibit A.  The restrictions contained in this Section shall terminate three (3) years after the Effective Date.

(Docket No. 41, Ex. C.)  This clause was proposed and drafted by the plaintiff's counsel.  As its

plain terms reflect, the non-compete clause contains a limitless geographic scope.  However, the

---

[4] The eleven client accounts are listed in Exhibit A to the Sale Agreement.  (Docket No. 41, Ex. B.)  Those accounts are with the following clients: Business Transportation Services, Dixie Ohio Express, Inc., DMC Transportation Services, Inc., Evergreen Transportation, Inc., First Express, Inc., Independent Truckers Group, Morristown Driver's Service, Inc., Nationwide Express, Paschall Truck Lines, Inc., Sharp Transportation, Inc., and Teton Transportation, Inc. (*Id.*)

[5] Both parties had appeared to agree that seven of the eleven clients were based in Tennessee and that the remaining four were located in the following states: Mississippi, Indiana, Kentucky, and Texas.  (Docket No. 47 ¶ 23.)  However, in his declaration, the plaintiff clarified that Evergreen Transportation, Inc., the purported Mississippi-based entity, was actually based in Alabama.  (Docket No. 49 ¶ 2.)  The defendant does not dispute this assertion.  A search performed on the website of the Alabama Secretary of State confirms that Evergreen Transportation, Inc. is an Alabama corporation.  *See* http://arc-sos.state.al.us/cgi/corpname.mbr/input (last visited May 4, 2012).  As for Independent Truckers Group, the purported Texas-based entity, the court's research shows that, according to the company's website, it is actually based in Memphis, Tennessee.  *See* http://independenttruckersgroup.com (last visited May 4, 2012).  A Business Information Search performed on the website of the Tennessee Secretary of State confirms that the entity is a Tennessee corporation.  *See* http://tnbear.tn.gov/Ecommerce/FilingSearch.aspx (last visited May 4, 2012).

eleven Drivers Advantage accounts the plaintiff purchased were with clients based in Tennessee, Alabama, Indiana, and Kentucky.  In addition, the plaintiff has adduced evidence showing that, at the time he contracted with AJGRMS, he had already marketed the Drivers Advantage Program to companies based in North Carolina, Mississippi, and Texas.[6]  (*See* Docket No. 49 ¶¶ 7, 10; Docket No. 49, Exs. B, D.)  One of these companies was Trimac Transportation ("Trimac"), an entity based in Houston, Texas.  (Docket No. 49 ¶ 10; Docket No. 49, Ex. D.)

The Sale Agreement also set forth a schedule in which the total purchase price of $147,623 was to be paid in three installments.  The first payment consisting of fifty percent of the $147,623 purchase price was due at the signing of the Sale Agreement.  The remainder of the purchase price was to be paid in two equal installments on March 18, 2010 and March 18, 2011.  The amount of these two payments was to be determined on March 18, 2010 by referring to the final price of the eleven Drivers Advantage accounts purchased by the plaintiff.[7]  On or near that date, both parties agreed that the final two payments would each be in the amount of $47,611.69.

Shortly after signing the Sale Agreement, the plaintiff departed AJGRMS and started his own business.  Almost one year after his departure, the plaintiff attended a truck show in Louisville, Kentucky, where he met Kevin Hite, an individual who worked for a company based

---

[6] This information is contained in the plaintiff's declaration (Docket No. 49) and the exhibits attached thereto.  After the plaintiff's counsel filed that declaration, the Clerk noted, in a separate docket entry, that the plaintiff's counsel failed to include the required description of the attached exhibits.  The Clerk thus directed him to resubmit the exhibits with such a description.  To date, the plaintiff's counsel has failed to correct this error.  The Order accompanying this Memorandum will direct the plaintiff to resubmit the exhibits attached to his declaration with the required description.

[7] In particular, the Sale Agreement specifies that the "[f]inal price will be calculated as actual revenue generated by the Exhibit A Accounts x 1.25% minus $73,812."  (Docket No. 41, Ex. C.)  The $73,812 figure constituted the amount of the first payment made by the plaintiff at the signing of the agreement.

in Texas called Homeland Healthcare. During the ensuing conversation, the plaintiff described to Hite his new business venture involving a driver fatigue management system for trucking companies related to sleep apnea. In the course of this conversation, Hite informed the plaintiff that his company did limited medical benefit business with Bob Clement, an employee of Gallagher Benefit Services ("GBS") in Kansas City, Missouri.[8] GBS is an affiliate of AJGRMS.

Following this conversation, the plaintiff sent an email to Caruso in March 2010 in which he, among other things,[9] asked whether AJGRMS had breached the non-compete clause in the Sale Agreement. In response, Caruso stated that AJGRMS had not violated the clause.[10] After receiving Caruso's response, the plaintiff timely mailed his second payment of the purchase price to AJGRMS on or before the contractual deadline of March 18, 2010.

The plaintiff subsequently filed this lawsuit on October 15, 2010. Between the time he received Caruso's response to his March 2010 email and his filing of the present action, the plaintiff did not inform anyone at AJGRMS about his conversation with Hite at the truck show in Louisville. After filing this action, the plaintiff did not make the third payment of the purchase price to AJGRMS, which was due on March 18, 2011.

---

[8] The plaintiff specifically testified at his deposition that Hite had informed him that his company worked with GBS in selling a limited medical benefit product to an entity based in Virginia called Bridge Terminal Transport ("BTT"). (Docket No. 41, Ex. A, at 22.)

[9] In his email, the plaintiff also provided Caruso with information concerning how the eleven Drivers Advantage accounts had performed. (Docket No. 47 ¶ 44.) This information was used to calculate the amount of the second and third payments of the total purchase price of the accounts. (*Id.*)

[10] The plaintiff does not believe that Caruso knew that the alleged breach occurred. (Docket No. 47 ¶ 48.) He also does not believe that personnel in the GBS office in Kansas City knew of the Sale Agreement's existence. (*Id.*)

According to the plaintiff, he has not made this final payment of $47,611.69 because he believes that AJGRMS has violated the non-compete clause in the Sale Agreement. In support of this assertion, the plaintiff relies on the following facts, which AJGRMS has not disputed for the purposes of the pending motion: (1) since AJGRMS entered into the Sale Agreement with the plaintiff, its affiliate, GBS, has continued to advertise and offer limited medical benefit plans on its website; (2) following the plaintiff's departure, AJGRMS, from its Kansas City, Missouri office, has continued to renew an existing limited medical benefit plan to Trimac and write a limited medical benefit plan for a Virginia-based entity called Bridge Terminal Transport ("BTT"); and (3) GBS sold a limited medical benefit product to Trimac from its Kansas City, Missouri office that was effective sometime in October 2010.

The plaintiff filed this action in the Circuit Court for Williamson County, alleging that AJGRMS and its affiliates sell competing limited medical benefit insurance products in violation of the Sale Agreement's non-compete clause and intended to do so all along. (Docket No. 1., Ex. 1 at 6-8.) He has asserted claims for breach of contract, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA"). (*Id.* at 7-9.) AJGRMS removed this case on November 17, 2010. (Docket No. 1.) On December 8, 2010, it filed its Answer. (Docket No. 8.) After the court entered a Memorandum and Order denying its Motion for Judgment on the Pleadings on February 10, 2011 (Docket No. 15), AJGRMS successfully obtained leave to amend its Answer to assert additional defenses and counterclaims. (Docket No. 28.) The counterclaims allege that the plaintiff: (1) breached the Sale Agreement by failing to make the third payment toward the purchase price of the eleven Drivers Advantage accounts; and (2) committed an abuse of process in filing the present lawsuit, as his real motivation for commencing this action was to prompt AJGRMS to release him from his contractual obligations.

(Docket No. 29 ¶¶ 28, 34-35.)  To date, the plaintiff has failed to file a responsive pleading to these counterclaims.  AJGRMS filed the present motion on January 17, 2012.  (Docket No. 37.)

<u>ANALYSIS</u>

## I.      Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party."  *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable."  *Anderson*, 477 U.S. at 249, 252.  An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.     The Defendant's Motion

### A.      Abandoned Claims

AJGRMS contends that it is entitled to summary judgment on all of the claims asserted in the plaintiff's Complaint. However, in his opposition brief, the plaintiff only defended his breach of contract claim. He otherwise failed to respond to any of the arguments raised in AJGRMS' motion concerning his fraudulent misrepresentation and TCPA claims.

In his opposition brief, the plaintiff implicitly abandons these two claims, as evidenced by his silence to the specific arguments levied by AJGRMS in its opening brief as to each of these causes of action. Moreover, at his deposition, the plaintiff essentially conceded his fraudulent misrepresentation claim. That claim was premised on Caruso's purported knowledge at the time the Sale Agreement was signed that AJGRMS was competing with the plaintiff and intended to continue to do so. (Docket No. 1, Ex. 1 at 7-8.) The plaintiff thus alleged that AJGRMS, through Caruso, made "material false and misleading statements and omitted material facts . . . including[,] but not limited to[,] the fact that the Defendant and its affiliates were not abandoning limited benefit plans and that they intended to continue offering such plans in direct competition with the Plaintiff." (*Id.* at 8.)

However, the plaintiff's deposition testimony tells a different story. Indeed, at his deposition, the plaintiff participated in the following exchange concerning Caruso's state of mind at the time the Sale Agreement was signed:

> Q.    And it sounds like during your conversations earlier today about Frank and his character and what you've come to learn about him.
>
>       You don't think he's made some type of official decision to violate that agreement, do you?
>
> A.    Absolutely not.
>
> Q.    When he signed that contract back in 2009, it sounds like you think he had every intention of abiding by it, isn't that right?

A.     Absolutely.[11]

(Docket No. 41, Ex. A at 29.)  The plaintiff also conceded at his deposition that he lacked any evidence showing that anyone else at Gallagher intentionally violated the non-compete clause contained in the Sale Agreement.  (*Id.*)

Accordingly, for the reasons expressed herein, the court finds that the plaintiff has abandoned his fraudulent misrepresentation and TCPA claims by virtue of his own failure to defend them in his response brief.  Summary judgment will therefore be granted to AJGRMS as to these two claims.

**B.     The Plaintiff's Breach of Contract Claim**

It is well-settled that, in Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract and (3) damages caused by the breach of contract.  *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).  AJGRMS argues that

---

[11] Earlier in his deposition, the plaintiff testified that he was sure that Caruso did not know that the defendant was allegedly violating the Sale Agreement when he responded to the plaintiff's March 2010 e-mail.  (Docket No. 41, Ex. A at 21.)  Specifically, after recalling the conversation with Hite at the truck show in Louisville, the plaintiff testified as follows:

> So[,] I left the truck show, and I sent Frank an e-mail, I think, and asked him . . . Frank, is this contract valid on paragraph 6?
>
> And Frank assured me that he -- that they had not violated when the guy told me he was doing business out there.  I'm sure Frank didn't know.  I know Frank didn't know because his character is better. So[,] he didn't know, but it's done.

(*Id.*)

summary judgment is warranted here because the plaintiff has failed to establish any of these three elements with respect to the non-compete clause contained in the Sale Agreement.

**1) Enforceability**

It is undisputed that the non-compete clause at issue here was entered into ancillary to the sale of a business, specifically, the book of business associated with the Drivers Advantage Program.  (*See* Docket No. 41, Exs. B, C; Docket No. 47 ¶¶ 22, 25-26.)  Generally, "a covenant which is incidental to the sale and transfer of a trade or business, and which purports to bind the seller not to engage in the same business in competition with the purchaser, is lawful and enforceable, provided such covenants are reasonable and go no further than affording a fair protection to the buyer."  *Greene Cnty. Tire and Supply, Inc. v. Spurlin*, 338 S.W.2d 597, 599-600 (Tenn. 1960) (internal quotation marks and citations omitted).  The "reasonableness of the restraint necessary to secure the buyer fair protection in receiving the benefits for which he made the purchase is to be determined by reference to the nature of the business, the manner in which it has been conducted and its territorial extent."  *Id.* at 600 (internal quotation marks omitted).

As AJGRMS points out in its opening brief, the non-compete clause contained in the parties' Sale Agreement lacks any defined geographic scope.  Citing *J.T. Shannon Lumber Co. v. Barrett*, No. 2:07-cv-2847-JPM-cgc, 2010 WL 3069818, at *9 (W.D. Tenn. Aug. 4, 2010), it asserts that this flaw makes the clause unreasonable and unenforceable.  (Docket No. 38, at 9.)  This contention is without merit.  Indeed, the court previously considered and rejected a similar argument when it denied AJGRMS' Motion for Judgment on the Pleadings.  In its Memorandum and Order, the court noted that, "in the most recent Tennessee case to deal with a non-compete agreement ancillary to a business sale, the Tennessee Court of Appeals imposed a reasonable geographic limitation consistent with the circumstances of the case, where the parties had not

made one explicit." (*See* Docket No. 15, at 7) (*citing Butts v. Birdwell*, 503 S.W.2d 930, 937 (Tenn. Ct. App. 1973)).

In addition, the *Barrett* case does not support voiding the non-compete clause under the present circumstances. Relying on Tennessee authority, the federal court in *Barrett* declined to void the non-compete clause at issue, because there was "no evidence that [the] Plaintiff acted with bad faith by inserting" it into the employment agreement. *Barrett*, 2010 WL 3069818 at *9. Here, AJGRMS does not contend that the plaintiff inserted the non-compete clause into the Sale Agreement in bad faith. In any event, the record evidence does not support such a finding, as AJGRMS, a subsidiary of a worldwide insurance brokerage company (Gallagher), accepted the non-compete clause drafted by the plaintiff's counsel (along with its limitless geographic scope) in the course of negotiating the Sale Agreement. The court in *Barrett*, again relying on well-settled Tennessee authority, also expressly recognized that, where a non-compete clause is overly broad, a court may also impose a reasonable limitation. *See Barrett*, 2010 WL 3069818 at *9 (stating that, when a non-compete clause is overly broad, the court may determine that the clause is enforceable to the extent that it is subject to reasonable territorial and temporal limitations). There, the court concluded that the geographic scope of the non-compete clause was overly broad (purporting to cover the entire globe), but nevertheless found that limiting the scope to include the Asian market was reasonable under the circumstances. *Id.*

The court thus turns its attention to the task of fashioning a geographic limitation to the non-compete clause that is reasonable under the circumstances. In determining a reasonable geographic scope, the court will consider "the nature of the business, the manner in which it has been conducted and its territorial extent." *Spurlin*, 338 S.W.2d at 600. The book of business acquired by the plaintiff here involved an insurance product that he helped develop called the

Drivers Advantage Program.  This product is a limited medical benefit plan offering basic levels of medical coverage.  In conducting his business affairs while employed for Gale Smith and AJGRMS, the plaintiff spent the majority of his time in Tennessee marketing the Drivers Advantage Program.  However, the record evidence shows that his efforts were directed at a wider geographic market.  Indeed, the plaintiff is licensed to sell insurance in Tennessee, Kentucky, and Florida.  In addition, the plaintiff testified that he is able to market the Drivers Advantage Program in other states where he is not licensed to sell insurance through partnerships he has with local brokers who possess such licenses.  AJGRMS does not dispute this testimony and, in fact, has admitted for the purposes of this motion, that an insurance product could be sold by someone who is not licensed in a particular state through the use of local brokers.  As for the territorial extent of his business activities, the record shows that the plaintiff agreed to purchase from AJGRMS eleven Drivers Advantage accounts with clients based in Tennessee, Alabama, Indiana, and Kentucky.  Moreover, the plaintiff has adduced evidence demonstrating that, at the time he contracted with AJGRMS, he had already marketed the Drivers Advantage Program to companies based in North Carolina, Mississippi, and Texas.  AJGRMS has not disputed this evidence.

Given these circumstances, the court believes that the non-compete clause should be modified to include a geographic scope that covers: (1) the states in which the plaintiff was licensed to sell insurance at the time he contracted with AJGRMS to purchase the eleven Drivers Advantage accounts; (2) the states in which the clients for those accounts were based; and (3) any other states in which the plaintiff had already marketed the Drivers Advantage Program at the time he signed the Sale Agreement with AJGRMS.  Such a modification offers a fair protection to the plaintiff-buyer "in receiving the benefits for which he made the purchase."  *See*

13

*Spurlin*, 338 S.W.2d at 599-600.  Accordingly, the court concludes that the territorial scope of the non-compete clause can be reasonably limited to the following states: Tennessee, Kentucky, Florida, Alabama, Indiana, North Carolina, Mississippi, and Texas.

AJGRMS opposes such an expanded scope and argues that the plaintiff is judicially estopped from contending that the non-compete clause is enforceable anywhere other than the three states in which he is licensed: Tennessee, Kentucky, and Florida.  Judicial estoppel is a doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).  It is an "equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."  *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (internal quotation marks omitted).  However, judicial estoppel "should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement."  *Id.* (internal quotation marks omitted).

In support of its judicial estoppel argument, AJGRMS asserts that the plaintiff successfully defeated its Motion for Judgment on the Pleadings and, more specifically, its argument that the non-compete clause's limitless geographic scope made it unenforceable, on the strength of the following argument:

> Plaintiff does not suggest that this Court or any court should
> enforce the agreement on a nationwide or worldwide basis.
> Rather, Carrigan maintains licenses in three states, which he did at
> the time of his employment with Gallagher and the Court should

only enforce the agreement in the markets where Carrigan's
product is sold or offered by him.

(Docket No. 13, at 1-2.)  AJGRMS submits that the plaintiff thus argued at that stage of the

proceedings that the non-compete clause should only be enforced in the three states in which he

is licensed to sell insurance: Tennessee, Kentucky, and Florida.  Accordingly, it argues that the

plaintiff is estopped from seeking an expansion of the clause's geographic scope beyond those

three states.

In his opposition brief, the plaintiff contends that his prior representation sought

enforcement of the non-compete clause not only in the states where he was licensed, but also in

those states where his products were offered or sold.  In any event, he argues that AJGRMS'

contention must fail because the court did not rely on his representation in rejecting its argument

that the non-compete clause was unenforceable due to its limitless geographic scope.  The court

agrees.  Indeed, even assuming, as AJGRMS submits, that the plaintiff proposed that the non-

compete clause should only be enforced in the three states in which he maintains a license, the

fact remains that the court never relied on this proposed modification when it previously rejected

the defendant's argument concerning the clause's unenforceability.  The court merely

acknowledged that the plaintiff had "posited a possible judicial modification that might be

made," but nevertheless concluded that it was not appropriate to modify the non-compete clause

at that stage of the proceedings because the factual record was not sufficiently developed.

(Docket No. 15, at 8.)  Thus, the plaintiff plainly did not prevail on his argument concerning a

possible judicial modification to the non-compete clause.  *See Maine*, 532 U.S. at 749.

Accordingly, AJGRMS' contention concerning judicial estoppel must fail.

**2)**      **Breach**

AJGRMS also argues that, even if the non-compete clause is enforceable, summary judgment is nonetheless appropriate as to the plaintiff's breach of contract claim because the plaintiff has not shown that AJGRMS engaged in any competitive activity in the states in which he is licensed to sell insurance. This assertion is tied to AJGRMS' position that the geographic scope of the non-compete clause should be limited to Tennessee, Kentucky, and Florida. However, the court has rejected that position and has instead imposed a geographic scope to the non-compete clause that it believes is reasonable under the circumstances of this case. The court will accordingly apply this modified geographic scope in analyzing whether, as the defendant submits, the plaintiff has not shown any evidence of a breach of the non-compete clause.

The non-compete clause contained in the Sale Agreement provides, in pertinent part, that:

> [AJGRMS] and its affiliates agree that they will not, directly or indirectly, solicit, accept any offer to provide or otherwise compete directly or indirectly with Buyer in the sale of a product known as the Driver[s] Advantage [P]rogram or similar product to any purchaser or potential purchaser of such product . . . The restrictions contained in this Section shall terminate three (3) years after the Effective Date.

(Docket No. 41, Ex. C.) The effective date of the Sale Agreement was March 18, 2009. Thus, the court must determine whether the plaintiff has adduced any evidence showing that AJGRMS or its affiliates solicited, accepted any offer to provide, or otherwise competed with him in selling the Drivers Advantage Program or a similar product to any purchaser or potential purchaser in any of the following states within the applicable three-year period ending March 18, 2012: Tennessee, Kentucky, Florida, Alabama, Indiana, North Carolina, Mississippi, and Texas.

The court finds that the plaintiff has successfully adduced such evidence here. For the purposes of this motion, it is undisputed that, since AJGRMS entered into the Sale Agreement

with the plaintiff on March 18, 2009, its affiliate, GBS, has continued to advertise and offer limited medical benefit plans on its website. The Drivers Advantage Program is a type of limited medical benefit plan. Indeed, AJGRMS has not argued that the Drivers Advantage Program is dissimilar from the limited medical benefit plans that either it or GBS offers. Moreover, GBS' online advertising of limited medical benefit plans effectively solicits business from purchasers and potential purchasers worldwide, which necessarily includes those based in Tennessee, Kentucky, Florida, Alabama, Indiana, North Carolina, Mississippi, and Texas. This activity thus constitutes a violation of the non-compete clause.

It is also undisputed that, following the plaintiff's departure in March 2009, AJGRMS, from its Kansas City, Missouri office, continued to renew an already existing limited medical benefit plan to Trimac, the Texas-company to whom the plaintiff had previously marketed the Drivers Advantage Program. By engaging in this activity, AJGRMS competed with the plaintiff in selling a product similar to the Drivers Advantage Program to an already existing purchaser in Texas. The non-compete clause plainly prohibited such competitive activity.[12] AJGRMS also

---

[12] In its response to the plaintiff's statement of additional facts, AJGRMS asserts that the non-compete clause did not prohibit it from renewing a pre-existing business relationship with Trimac, because it is undisputed that the parties never discussed during their contract negotiations what would happen to any limited medical benefit accounts that AJGRMS or its affiliates were already servicing. (Docket No. 51 ¶ 68.) This argument is without merit. While the parties may never have discussed what would happen to such accounts during their negotiations, the plain terms of the non-compete clause address this topic. Indeed, the non-compete clause unambiguously prohibits AJGRMS and its affiliates from competing "directly or indirectly with [the plaintiff] in the sale of a product known as the Driver[s] Advantage [P]rogram or similar product to any *purchaser or potential purchaser* of such product." (Docket No. 41, Ex. C) (emphasis added). Thus, the clause plainly distinguishes "potential purchasers" of the Drivers Advantage Program or similar products from existing "purchasers" of such products, and prohibits AJGRMS and its affiliates from making competing sales to either group. *See Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) ("It is the court's duty to enforce contracts according to their plain terms.")

admits, for the purposes of this motion, that GBS sold a limited medical benefit product to Trimac from its Kansas City, Missouri office that was effective sometime in October 2010. This affiliate's competing sale to the same purchaser similarly violated the non-compete clause contained in the parties' Sale Agreement.[13]

In sum, the undisputed evidence shows that AJGRMS breached the non-compete clause contained in the Sale Agreement it signed with the plaintiff.

3)    **Damages**

While AJGRMS does not address the issue of damages in its legal briefs, it does address the subject in its response to the plaintiff's statement of additional facts. Specifically, it asserts that the plaintiff has not been damaged by any competing sales to Trimac in Texas because he is not licensed to sell insurance there. (Docket No. 51 ¶ 66.) Again, this assertion is tied to AJGRMS' unsuccessful attempt to limit the geographic scope of the non-compete clause to Tennessee, Kentucky, and Florida. However, the court has already concluded that the reasonable geographic scope of the non-compete clause covers the competing sales made in Texas. While the parties dispute the specific amounts involved, it is undisputed that AJGRMS and its affiliate, GBS, earned revenues from their sales of limited medical benefit plans to Trimac. Moreover, AJGRMS appears to concede that, to the extent the non-compete clause

---

[13] The plaintiff also contends that AJGRMS breached the non-compete clause contained in the parties' Sale Agreement by writing a limited medical benefit plan to BTT, an entity based in Virginia. While it is undisputed that AJGRMS engaged in such business activities, it is nevertheless immaterial, because the reasonable geographic scope of the non-compete clause does not cover competing sales made by AJGRMS in Virginia.

covers competing sales made to Trimac in Texas, the plaintiff has shown that he suffered some amount of damages.[14]  (Docket No. 51 ¶ 66.)

Accordingly, because the plaintiff has adduced evidence demonstrating the existence of an enforceable agreement, nonperformance amounting to a breach, and resulting damages, AJGRMS' motion for summary judgment as to the plaintiff's breach of contract claim will be denied.

### C.  AJGRMS' Counterclaim

Finally, AJGRMS asserts that it is entitled to summary judgment on its counterclaim against the plaintiff for breach of the Sale Agreement.  In support of its motion, it argues that it is undisputed that the plaintiff failed to timely make the last payment of $47,611.69 toward the purchase price of the eleven Drivers Advantage Program accounts, which was due on March 18, 2011.  The plaintiff has asserted in his responses to AJGRMS' first requests for admission and statement of undisputed facts that he was not obligated to make the final payment because of AJGRMS' earlier breach of the non-compete clause.  (Docket No. 41, Ex. D ¶ 10; Docket No. 47

_____

[14] Aside from seeking contractual damages in his Complaint, the plaintiff also seeks a refund of the entire purchase price of the eleven Drivers Advantage accounts with interest. (Docket No. 1, Ex. 1 at 7.)  Leaving aside the fact that the plaintiff did not pay the entire purchase price for those eleven accounts, the court notes that this claim for relief appears to sound in restitution.  Restitution is a remedy that "'restores the injured party to the position he occupied prior to the contract being made.  In some cases, it contemplates the return of the specific property and in others, a judgment for the equivalent in money for the performance rendered by the Plaintiff and received by the Defendant.'" *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 207 (Tenn. Ct. App. 2010) (internal quotation marks omitted). Restitution damages are recoverable for breach of contract "when rescission of the contract is sought and awarded." *Id.*  However, since the plaintiff does not seek rescission of the contract in his Complaint, such damages are unavailable here.

¶ 54.)  In response, AJGRMS notes that, because the plaintiff has not filed a responsive pleading to its First Amended Answer and Counterclaims, he is in default and has waived any affirmative defenses to its breach of contract counterclaim.

In his opposition brief, the plaintiff's counsel neither explains his failure to file a responsive pleading to the First Amended Answer and Counterclaims nor seeks leave of court to file a response and assert any affirmative defenses.  Instead, he devotes a single paragraph in a footnote to his argument, in which he appears to contend that his filing of a Complaint asserting that AJGRMS breached the contract cures his subsequent failure to serve an answer to the counterclaims and assert any corresponding affirmative defenses therein.  The plaintiff's contention is without merit.  Federal Rule of Civil Procedure 12(a)(1)(B) expressly provides that "[a] party *must* serve an *answer* to a counterclaim . . . within 21 days after being served with the pleading that states the counterclaim or crossclaim."  Fed. R. Civ. P. 12(a)(1)(B) (emphasis added).  A complaint is plainly not an answer.  Having failed to serve an answer, the plaintiff has effectively defaulted.[15]   Accordingly, AJGRMS is entitled to summary judgment on its breach of contract counterclaim.

While this is admittedly a harsh result, the court is constrained to reach it under the present circumstances.

## CONCLUSION

Based on the foregoing, the defendant's Motion for Summary Judgment (Docket No. 37) will be **GRANTED** in part and **DENIED** in part.

---

[15] The court notes that AJGRMS has not moved for entry of default or for a default judgment pursuant to Federal Rule of Civil Procedure 55.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge