IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARY CARRIGAN, )
)
    Plaintiff, )
) Case No. 3:10-cv-1089
) Judge Trauger
v. )
)
ARTHUR J. GALLAGHER RISK )
MANAGEMENT SERVICES, INC., )
)
    Defendant. )

## MEMORANDUM

This matter comes to the court pursuant to an Order to Show cause entered on May 10, 2012 (Docket No. 53). In that Order, the defendant was directed to show cause, by May 18, 2012, why the court should not grant summary judgment to the plaintiff on his claim for breach of contract. (*Id.*) The defendant has timely filed a response (Docket No. 54), and this matter is now ripe for resolution. Also before the court is the defendant's Motion for Default (Docket No. 55), to which the plaintiff has filed a response (Docket No. 62). For the reasons discussed herein, the court will grant summary judgment to the plaintiff on his claim for breach of contract and deny the defendant's Motion for Default.

## RELEVANT FACTUAL BACKGROUND

The court recounted the factual and procedural history of this case in its May 10, 2012 Memorandum opinion (Docket No. 52); therefore, some familiarity with the facts will be assumed.

The plaintiff, Gary Carrigan, was formerly employed by the defendant, Arthur J.

1

Gallagher Risk Management Services, Inc. ("AJGRMS"), a subsidiary of Arthur J. Gallagher &

Co. ("Gallagher"), a worldwide insurance brokerage company active in a variety of insurance

related business.[1]  Prior to his employment with AJGRMS, the plaintiff was employed by Gale

Smith and Company ("Gale Smith"), an insurance brokerage company located in Brentwood,

Tennessee.  Gallagher later acquired Gale Smith, and the plaintiff subsequently became an

AJGRMS employee working out of the same location in Brentwood.  While employed at Gale

Smith and AJGRMS, the plaintiff sold an insurance product he helped develop known as the

"Drivers Advantage Program."  This product is a limited medical benefit plan and was

specifically developed for individuals employed in the trucking industry.

Sometime after Gallagher's acquisition of Gale Smith, AJGRMS and the plaintiff

negotiated his departure from the company and his purchase of the eleven client accounts

associated with his Driver's Advantage Program book of business ("the Drivers Advantage

accounts") that he would take with him upon his exit.  These negotiations led to an agreement

("the Sale Agreement"), whereby the plaintiff agreed to purchase the aforementioned accounts.

The Sale Agreement, which was effective March 18, 2009, contained the following non-

compete clause:

> [AJGRMS] and its affiliates agree that they will not, directly or
> indirectly, solicit, accept any offer to provide or otherwise compete
> directly or indirectly with Buyer in the sale of a product known as the
> Driver[s] Advantage [P]rogram or similar product to any purchaser
> or potential purchaser of such product, nor shall [AJGRMS] solicit,
> accept any offer to provide or otherwise induce the termination or
> non-renewal of the Drivers Advantage [P]rogram listed on the

---

[1] Unless otherwise noted, the facts are drawn, and in large part reproduced, from the court's May 10, 2012 Memorandum opinion.

>attached Exhibit A. The restrictions contained in this Section shall
>terminate three (3) years after the Effective Date.

As its plain terms reflect, the non-compete clause contains a limitless geographic scope. However, the eleven Drivers Advantage accounts the plaintiff purchased were with clients based in Tennessee, Alabama, Indiana, and Kentucky. In addition, at the time he contracted with AJGRMS, the plaintiff had already marketed the Drivers Advantage Program to companies based in North Carolina, Mississippi, and Texas.[2] One of these companies was Trimac Transportation ("Trimac"), an entity based in Houston, Texas.

The Sale Agreement also set forth a schedule in which the total purchase price of $147,623 was to be paid by the plaintiff in three installments. The first payment, consisting of fifty percent of the $147,623 purchase price, was due at the signing of the Sale Agreement. The remainder of the purchase price was to be paid in two equal installments on March 18, 2010 and March 18, 2011. The amount of these two payments was to be determined on March 18, 2010 by referring to the final price of the eleven Drivers Advantage accounts purchased by the plaintiff.[3] On or near that date, both parties agreed that the final two payments would each be in the amount of $47,611.69.

Almost one year after his departure from AJGRMS, the plaintiff attended a truck show in Louisville, Kentucky, where he met Kevin Hite, an individual who worked for a company based in Texas called Homeland Healthcare. During the ensuing conversation, the plaintiff described to

---

[2] The plaintiff is also personally licensed to sell insurance in Tennessee, Kentucky, and Florida.

[3] In particular, the Sale Agreement specifies that the "[f]inal price will be calculated as actual revenue generated by the Exhibit A Accounts x 1.25% minus $73,812." (Docket No. 41, Ex. C.) The $73,812 figure constituted the amount of the first payment made by the plaintiff at the signing of the agreement.

Hite his new business venture involving a driver fatigue management system for trucking companies related to sleep apnea. In the course of this conversation, Hite informed the plaintiff that his company did limited medical benefit business with Bob Clement, currently the Area President of Gallagher Benefit Services ("GBS") in Kansas City, Missouri. GBS is an affiliate of AJGRMS.

Following this conversation, in March 2010, the plaintiff sent an email to Frank Caruso, an Area President in AJGRMS' Brentwood office, in which he asked whether AJGRMS had breached the non-compete clause in the Sale Agreement. In response, Caruso stated that AJGRMS had not violated the clause.[4] After receiving Caruso's response, the plaintiff timely mailed his second payment of the purchase price to AJGRMS on or before the contractual deadline of March 18, 2010.

The plaintiff subsequently filed this lawsuit on October 15, 2010. After filing this action, the plaintiff did not make the third payment of the purchase price to AJGRMS, which was due on March 18, 2011.

According to the plaintiff, he has not made this final payment of $47,611.69 because he believes that AJGRMS has violated the non-compete clause in the Sale Agreement. In support of this assertion, the plaintiff relies on the following undisputed facts: (1) since AJGRMS entered into the Sale Agreement with the plaintiff, its affiliate, GBS, has continued to advertise and offer limited medical benefit plans on its website; (2) following the plaintiff's departure, AJGRMS, from its Kansas City, Missouri office, has continued to renew an existing limited medical benefit

---

[4] The plaintiff does not believe that Caruso knew that the alleged breach occurred. (Docket No. 47 ¶ 48.) He also does not believe that personnel in the GBS office in Kansas City knew of the Sale Agreement's existence. (*Id.*)

4

plan to Trimac and write a limited medical benefit plan for a Virginia-based entity called Bridge Terminal Transport; and (3) GBS sold a limited medical benefit product to Trimac from its Kansas City, Missouri office that was effective sometime in October 2010.

The plaintiff filed this action in the Circuit Court for Williamson County, alleging that AJGRMS and its affiliates sell competing limited medical benefit insurance products in violation of the Sale Agreement's non-compete clause and intended to do so all along. He asserted claims for breach of contract, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA"). AJGRMS removed the case to this court on November 17, 2010 and, on December 8, 2010, it filed its Answer. After the court entered a Memorandum and Order denying its Motion for Judgment on the Pleadings on February 10, 2011, AJGRMS successfully obtained leave to amend its Answer to assert additional defenses and counterclaims. The counterclaims allege that the plaintiff: (1) breached the Sale Agreement by failing to make the third payment toward the purchase price of the eleven Drivers Advantage accounts; and (2) committed an abuse of process in filing the present lawsuit, as his real motivation for commencing this action was to prompt AJGRMS to release him from his contractual obligations. AJGRMS then filed a Motion for Summary Judgment on January 17, 2012.

On May 10, 2012, the court issued a Memorandum opinion (Docket No. 52) granting, in part, and denying, in part, AJGRMS' motion. Specifically, the court granted AJGRMS summary judgment as to the plaintiff's fraudulent misrepresentation and TCPA claims. (*Id.*) It also granted summary judgment to AJGRMS on its breach of contract counterclaim, finding that, because the plaintiff failed to serve an answer to the counterclaim, he had effectively defaulted. (*Id.*) The court denied AJGRMS' motion to the extent it sought summary judgment on the

5

plaintiff's breach of contract claim. (*Id.*) The defendant was also directed to show cause, by May 18, 2012, why the court should not grant summary judgment to the plaintiff on his claim for breach of contract. (Docket No. 53.) The defendant subsequently filed a timely response to the show cause order on May 18, 2012. (Docket No. 54.) On the same date, it filed its Motion for Default. (Docket No. 55.)

## ANALYSIS

### I. Summary Judgment

#### A. Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the

party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

**B.     The Plaintiff's Breach of Contract Claim**

It is well-settled that, in Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). In its May 10, 2012 Memorandum opinion, the court concluded that the plaintiff had established all three of these elements. First, the court found that the non-compete clause contained in the parties' Sale Agreement was enforceable and limited its geographic scope to the following states: Tennessee, Kentucky, Florida, Alabama, Indiana, North Carolina, Mississippi, and Texas. (Docket No. 52, at 13-14.) Next, it concluded that the undisputed evidence showed that AJGRMS breached the non-compete clause when: (1) AJGRMS' affiliate, GBS, continued to advertise and offer limited medical benefit plans on its website after AJGRMS entered into the Sale Agreement with the plaintiff on March 18, 2009; (2) AJGRMS continued to renew an already existing limited medical benefit plan to Trimac, the Texas company to whom the plaintiff had previously marketed the Drivers Advantage Program, after the plaintiff's departure from AJGRMS in March of 2009; and (3) GBS sold a limited medical benefit product to Trimac that was effective sometime in October 2010. (*Id.* at 16-18.) Finally, the court found that it was undisputed that the plaintiff had suffered some amount of damages. (*Id.* at 18-19.)

In its response to the court's Order to Show Cause, AJGRMS argues that summary judgment should be denied because there is a question of fact concerning who was the first party

7

to materially breach the Sale Agreement. (Docket No. 54, at 1-2.) It specifically contends that the plaintiff first materially breached the agreement when he failed to make the last payment of $47,611.69 toward the purchase price of the eleven Drivers Advantage accounts, which was due on March 18, 2011. (*Id.* at 3.) Thus, AJGRMS asserts that the plaintiff is foreclosed from asserting a breach of contract claim. (*Id.* at 2-3.) Although AJGRMS does not cite any Tennessee case law in support of its position, courts in Tennessee recognize that "[a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990).

The court finds that AJGRMS' contention is without merit because it was the first party to materially breach the non-compete clause contained in the Sale Agreement. That clause prohibits AJGRMS and its affiliates from soliciting, accepting any offer to provide, or otherwise competing with the plaintiff in selling the Drivers Advantage Program or a similar product to any purchaser or potential purchaser in any of the following states within a three-year period ending March 18, 2012: Tennessee, Kentucky, Florida, Alabama, Indiana, North Carolina, Mississippi, and Texas. (Docket No. 41, Ex. C.) The court, however, has already found that AJGRMS and its affiliate, GBS, violated those terms by engaging in certain competitive activities. As a result, the plaintiff was deprived of the benefit of his bargain, that is, the ability to market and sell the Drivers Advantage Program free and clear of competition by AJGRMS during the applicable three-year period. These competitive activities thus constitute a material breach.[5] Because these breaches preceded any failure by the plaintiff to make the $47,611.69

---

[5] The circumstances relevant to determining whether a party's breach is material include:

8

payment due on March 18, 2011, any failure by the plaintiff to make this payment should not prevent him from seeking damages from AJGRMS.

Accordingly, in light of the foregoing, the court will grant summary judgment to the plaintiff on his claim for breach of contract against AJGRMS.[6]

---

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*McClain*, 806 S.W.2d at 199 (*quoting Restatement (Second) of Contracts* § 241 (1979)).

[6] AJGRMS contends that, to the extent that summary judgment is granted to the plaintiff, the plaintiff's recovery should be limited to the two years in which he was actually in compliance with the Sale Agreement (March 18, 2009 - March 18, 2011), since the plaintiff failed to make the $47,611.69 payment due on March 18, 2011. (Docket No. 54, at 4.) Without citing any authority, AJGRMS specifically asserts that the plaintiff's claims for recovery beyond March 18, 2011 should fail for want of consideration and also as a matter of equity. (*Id.*) This contention is without merit.

In its First Amended Answer and Counterclaims, AJGRMS asserted that the plaintiff breached the Sale Agreement by failing to make the $47,611.69 payment due on March 18, 2011. (Docket No. 29, at 12.) While the court did indeed grant summary judgment to AJGRMS on its breach of contract counterclaim, the only reason it did so was due to the failure of the plaintiff to file an answer to AJGRMS' counterclaims. (Docket No. 52, at 20.) Moreover, the court has already found that AJGRMS was the first party to materially breach the Sale Agreement by violating the non-compete clause. But for the plaintiff's failure to file an answer to AJGRMS' counterclaims, such a finding would ordinarily preclude AJGRMS from recovering for the plaintiff's later material breach. *McClain*, 806 S.W.2d at 199 ("A party who has

**II.     Motion for Default**

AJGRMS also moves for a default judgment on its counterclaim for abuse of process pursuant to Federal Rule of Civil Procedure 55. Specifically, it argues that it is entitled to a default judgment because the plaintiff has failed to file an answer to its counterclaims. (Docket No. 56, at 2.) In response, the plaintiff contends that AJGRMS' motion should be denied because a motion for default judgment is a dispositive motion, and the deadline established in the Initial Case Management Order (Docket No. 20) for filing such motions expired on January 15, 2012. (Docket No. 62.) The court agrees. *See Callier v. Gray*, 167 F.3d 977, 981-82 (6th Cir. 1999) (noting that a motion for default judgment is a dispositive motion).

In its response (Docket No. 70) to the plaintiff's Motion to Permit Filing of Answer Out of Time (Docket No. 63), AJGRMS argues that, to the extent the court concludes that a motion for default judgment is a dispositive motion, it should nonetheless grant AJGRMS leave to file its motion for default judgment. (Docket No. 70, at 7.) In support, it asserts that it interpreted a footnote appearing on page 20 of the May 10, 2012 Memorandum opinion as an invitation to move for default judgment on its abuse of process counterclaim. (*Id.*) However, in that footnote, the court simply noted that "AJGRMS has not moved for entry of default or for a default judgment pursuant to Federal Rule of Civil Procedure 55" in the course of granting its counterclaim for breach of contract. (Docket No. 52, at 20.) Contrary to AJGRMS' suggestions otherwise, the court was not "inviting" it to file such a motion out of time in connection with its abuse of process counterclaim.

---

materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract."). Given these circumstances, the court finds that it would be inequitable to limit the plaintiff's recovery of damages in the manner requested by AJGRMS.

AJGRMS has long known that the plaintiff failed to file an answer to its counterclaims. Indeed, this very failure served as the basis for its prior motion for summary judgment on its breach of contract counterclaim. At that time, AJGRMS had the opportunity to also move for summary judgment on its abuse of process counterclaim, yet it failed to do so. Given these circumstances, AJGRMS' request for leave to file its motion will be denied.

Accordingly, for all of these reasons, the court will deny the defendant's Motion for Default.

## CONCLUSION

Based on the foregoing, summary judgment will be **GRANTED** in the plaintiff's favor on his claim for breach of contract and AJGRMS' Motion for Default (Docket No. 55) will be **DENIED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11